MARTIN J. FERGUSON *vs.* GEORGE A. FULLER COMPANY *et al.*

MAY 11, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker and Condon, JJ.

BAKER, J. This is a petition brought under the provisions of the workmen's compensation act, general laws 1938, chapter 300, to review an agreement for compensation. After a hearing in the superior court the trial justice entered a decree denying and dismissing the petition, and from the entry of that decree the petitioner duly prosecuted his appeal to this court.

The evidence, apart from the medical testimony, showed the following sequence of events. The petitioner, a carpenter, who was about forty-eight years of age and weighed over two hundred pounds at the time of the trial, had been a resident of Foxboro in the commonwealth of Massachusetts for several years. On December 9, 1942, in the course of his employment by the respondents in Rhode Island, he and three other men were moving a bulkhead, so called, being part of a Quonset hut. This bulkhead weighed approximately 600 pounds and the petitioner was carrying one of its front corners on his right shoulder. The man who was carrying the other front corner stepped into a hole or depression which was covered with snow and, while petitioner did not fall, the entire weight of the front of the bulkhead was thrown upon his shoulder, which was thereby injured. He stopped work at once and on the following day consulted a doctor in Foxboro who diagnosed the injury as acute bursitis.

Following that injury a preliminary agreement was entered into under which the petitioner was paid for total disability until July 28, 1943. On October 13, 1943 while he was shingling the roof of a small one-story building or shed the ladder upon which he was standing twisted, the

ground being uneven. He tried to support himself and steady the ladder by reaching up with his right arm to hold onto the eaves of the building. He was, however, not able to do so since his arm "locked," allegedly because of the injury to his shoulder on December 9, 1942, and he fell upon an oil drum which was under the ladder and was injured. A second preliminary agreement was thereupon executed under which he received payments for total disability to November 3, 1943. Under date of November 16, 1943 a settlement receipt was signed by the petitioner showing that he had been paid compensation amounting to $723.33 covering both the above occurrences.

Thereafter on April 5, 1944 the parties entered into a supplementary preliminary agreement which was duly approved May 3, 1944. That agreement referred to the original accident as the cause of the injury and made December 20, 1943 the starting date of the third incapacity thereunder. It also provided for the payment of compensation to the petitioner for the duration of total disability. A settlement receipt, bearing the same dates as such supplementary agreement, was also signed by the parties according to which receipt the petitioner was paid the further sum of $280 for total incapacity terminating on March 25, 1944. On this receipt over his signature appears the following: "I am in business for myself and earning as much money per wk. as I was earning when injured."

The evidence further shows that in April 1945, while doing carpentry on his own account inside a house, petitioner fell from a stepladder and injured his chest and other parts of his body. No compensation agreement was entered into by the parties respecting this happening. After the original accident of December 9, 1942 the petitioner was not again employed by the respondents and all the work he did thereafter was for his own benefit as an independent carpenter.

It is the petitioner's apparent contention that all his falls and injuries stem from the first accident of December

9, 1942; that he is now at least partially incapacitated; that in the circumstances he is entitled to some compensation; and that he has the right to receive the cost of medical treatment in excess of $300. The respondents contest these claims.

The petitioner offered as witnesses two doctors both of whom testified by deposition. The first was an osteopathic physician who was consulted by the petitioner on the day after the original accident. This doctor treated him for acute acromial bursitis and muscular strain of the upper back and right shoulder by using diathermy and massage two and three times a week for about thirteen months. At the end of this period the petitioner was improved and had approximately 80 per cent motion in his right arm. This doctor treated him again in the same manner about once a week from April 12, 1944 to March 28, 1945. Thereafter the doctor saw him professionally about nine times prior to December 3, 1946 which was the last time treatment consisting of massage and manipulative therapy was administered. During this last period the petitioner complained of pain in the mid-thoracic area of the spine radiating around the ribs and also of limited motion of the right shoulder. The doctor further testified that as bursitis becomes chronic a calcium deposit forms which creates arthritis; that he found petitioner had developed an arthritic condition which affected various parts of his body; and that in his opinion such condition was caused by trauma from petitioner's injuries and falls.

The other doctor who was called by the petitioner also lived in Foxboro. He was a general practitioner and treated him from April 19, 1945 to February 1946 for pain and restriction of motion in the right shoulder, arm, neck, back and abdomen. This doctor found a 30 per cent limitation of motion in the shoulder. The petitioner complained to him of having had an injury about a week before April 19, 1945 while working in a well hole and standing upon a ladder which gave way. He reached for support and his

right shoulder locked with the result that he fell hurting his arm, shoulder, back, neck and abdominal muscles. This doctor was of the opinion that the petitioner could do administrative and directive work but that heavy work would aggravate his arthritic condition. In June 1945 a doctor in Boston was consulted respecting the petitioner's condition and the latter on advice spent about four weeks, starting July 27, 1945, in a Boston hospital for diagnosis and treatment. · The diagnosis was hypertrophic arthritis of the right shoulder joint and spinal vertebrae.

The respondents presented as a witness Dr. Roland Hammond, of Providence, who had acted for the director of labor as an impartial medical examiner on December 27, 1945, the present petition having been filed in November of that year. This witness testified that according to his records, although many questions were asked of the petitioner, he did not mention any locking of his arm. Upon examination, the witness found that the petitioner could move his arms, legs and spine freely without pain with the exception of the right arm which he raised voluntarily only to the horizontal position. The doctor, however, was able to move it without pain through the full arc of motion up to the side of the head.

In giving his opinion of the petitioner's condition the doctor, after referring to certain complaints of pain, stated: "X-ray examination includes both shoulders and the entire spine and the right knee. These joints show a mild degree of hypertrophic arthritis pretty generally distributed throughout the spine and in the shoulder joints. This patient is suffering from an arthritis which had been lighted up by a series of accidents so that the pain follows the distribution of the arthritis. The long duration of this disability has produced a nervous upset which verges on hysteria. * * * I thought what he needed most was psychiatric treatment, and, of course, keep up the physiotherapy."

In deciding the cause the trial justice in his rescript, after

making certain observations with respect to the impossibility of saying with accuracy what effect each of the three accidents had upon the body of the petitioner, made the following comment: "It must be remembered that the Court is dealing with incapacity and not with the residual effects of injury which do not affect or at least do not diminish the earning power of the injured person."

The decree appealed from contained the following findings of fact: "1. That the petitioner has failed to prove that the accident of October 18, 1943 was caused by the accident of December 9, 1942; 2. That the petitioner has failed to prove that the accident of April, 1945 was caused by the accident of December 9, 1942; and 3. That the petitioner has failed to prove that he has suffered or is suffering any incapacity for work on account of the accident of December 9, 1942 subsequent to the last settlement agreement signed by the parties on April 5, 1944 and approved by the Director of Labor."

Upon careful consideration of all the evidence and especially the testimony of Dr. Hammond, we have come to the conclusion that there was no legal evidence to support the first two findings set out in the decree. In fact an examination of the trial justice's written decision shows clearly that he did not specifically make such findings but that he rested his decision solely on the third finding of fact, which in our judgment is determinative of the case. Upon consideration of the entire record, we are of the opinion that there was legal evidence to support that finding. Therefore, in the absence of fraud such finding becomes conclusive under the act.

Without attempting to review the entire evidence and discuss inferences which the trial justice may reasonably have drawn therefrom in arriving at his findings, it may be noted among other things that the evidence shows that after July 1943 the petitioner was at various times, although not continuously, engaged in doing different kinds of carpenter's work as a jobber or contractor; that his most recent

physical examination in December 1945 showed that while he was suffering from an arthritic condition in certain parts of his body, nevertheless he had full motion in his back and limbs with the exception of his right shoulder where a limitation of about 20 per cent was indicated; that he testified in substance he had previously acted in a supervisory capacity on contract jobs involving the building of houses, and that in the summer and fall of 1946 two jobs were started on which he had agreed to act in that capacity and which, if they were carried out as expected, would net him $1200 each. In addition the trial justice apparently gave weight to the statement contained in the settlement receipt of April 5, 1944 over the petitioner's signature to the effect that he was then in business for himself and earning as much money as when injured. In regard to this receipt the court asked the petitioner's attorney if he made any claim of misrepresentation, fraud or anything of that kind and the attorney answered: "No, no question of fraud here, Your Honor * * *."

Even though the petitioner may be suffering some physical defects from the series of happenings which befell him the trial justice has found on legal evidence that, in spite of these defects, the petitioner did not prove that after April 5, 1944 he was incapacitated for work on account of the accident of December 9, 1942. It is established that recovery of compensation under our act is based only on loss of earning capacity. *Weber* v. *American Silk Spinning Co.*, 38 R. I. 309. Considering the above finding in the light of the evidence we are of the opinion that the petitioner's contention that he is partially incapacitated from earning full wages and entitled to some compensation has not been successfully maintained. The burden was on him to prove both his incapacity and its causal connection with the original accident.

The petitioner has also argued that the trial justice committed reversible error in sustaining the respondents' objections to several questions asked him by his own attorney.

We have examined the transcript in respect to the instances referred to and find that the rulings of the trial justice do not constitute prejudicial error.

The present petition for review also contains, under the heading of medical fees, a request for the allowance of expenses in excess of the maximum as stipulated in G. L. 1938, chap. 300, art. II, §5, as amended by P. L. 1942, chap. 1226. That section provides that "in unusual cases where the amounts stipulated by this section are not sufficient to cover specialized or prolonged treatment necessary to effect cure or rehabilitation of the injured employee, the director of labor may order payment of charges for medical and dental services and medicines beyond the stated maxima following hearing upon petition * * *."

The decision of the director of labor in denying the instant petition makes no reference to the petitioner's claim for additional medical services. Likewise the rescript of the trial justice, although it refers briefly to the fact that such a claim is being made, nevertheless does not specifically pass upon it, but merely determines the question of incapacity and dismisses the petition in general terms. In the circumstances it is our opinion that this phase of the petitioner's claim should not now be passed upon for the first time by this court. Therefore affirmance of the decree as modified is without prejudice to the right of the petitioner, if he sees fit, to file a separate petition in the department of labor covering this particular matter.

The appeal of the petitioner is sustained as to the first and second paragraphs of the decree appealed from, and it is ordered that said paragraphs be stricken from the decree; in other respects the appeal is denied, the decree appealed from, as heretofore modified, is affirmed, and the cause is remanded to the superior court for further proceedings.

On Motion for Reargument.

August 9, 1948.

Per Curiam. After our opinion was filed in this cause

the petitioner requested leave to file a motion for reargument, which request was granted and such a motion was duly filed.

The motion contains no new matter not previously considered in our original opinion. We sustained therein a finding of the trial justice that the petitioner had failed to prove that subsequent to the settlement agreement of April 5, 1944 he was suffering any incapacity for work on account of his accident of December 9, 1942. He is now asking us to make an order for compensation for partial incapacity or, in the alternative, to remit the cause to the superior court for further hearing, citing as authority our action in *Dorfman* v. *Rosenthal Ackerman Millinery Co.*, 64 R. I. 498.

In the circumstances we are of the opinion that we should not make such an order, and we also decline to remit the cause for the purpose indicated. Since the above-cited case was decided the practice in regard to filing petitions for review has been liberalized by statute and the petitioner's rights, if any he has, are fully protected.

Motion denied.