237 A.2d 320.

PELOSO, INC. *vs.* GEORGE PELOSO.

JANUARY 17, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is an employee's appeal from a decree of the workmen's compensation commission which on the employer's petition to review found that the employee had regained his earning capacity and so ordered the suspension of the payment of future compensation benefits.

The petitioner is a common carrier engaged in the highway transport of commodities which, because of their unusual size or weight, require special handling in transit. A particular knowledge of the intricacies of the art of rigging is a necessity for the successful operation of the business. Although the corporation is the nominal petitioner, this cause was instituted at the behest of its insurance carrier. The employee, George Peloso, hereafter referred to as respondent, owns 12 per cent of the corporation's stock. The respondent's parents are the majority stockholders. His father is president and treasurer of the corporation.

The respondent is a man in his late thirties. He has worked with his father in this highly specialized field of transportation for 22 years. As a result of his long experience doing this type of work, he has acquired an expertise which is unique.

Up to the time he was injured, respondent was the corporation's man in the field. He drove trucks to various portions of the United States and supervised the loading and unloading of the cargo entrusted to the corporation's care. His father, on the other hand, attended to the duties of the office. On September 22, 1965, a crane boom on which respondent was working became loose, swung out of control and pinned him against the cab of the crane. As a result of this unfortunate incident, respondent's trachea was rup-

tured, his ribs fractured and his shoulders suffered severe contusions. He was hospitalized for 15 days. Thereafter, on October 14, 1965, respondent entered into a preliminary agreement which awarded him compensation for the duration of his total incapacity. This petition to review that agreement was filed on August 3, 1966.

It is conceded that notwithstanding his injuries, the corporation has continued to pay respondent his usual weekly salary of $131.10. This sum is the net amount paid respondent after the corporation has made the usual payroll deductions including such items as the federal income and social security taxes.

The respondent's injuries caused a realignment of the duties which he had shared with his father. In an effort to fill the void created by respondent's forced retirement from the corporation's activities, respondent's father foresook his office duties and assumed his son's position in the field. Shortly after his release from the hospital, respondent began performing different duties in the corporation's office such as taking orders, keeping records and giving estimates. During this period, he was from time to time in telephonic communication with his father providing him with instructions as to the best procedure in handling sundry rigging problems which would occur on the actual on-the-spot operations of the business. The record indicates that the time which respondent was engaged in such activity varied both as to the number of days he worked each week and the number of hours he spent each day in the office.

The respondent contends that the full commission erred in finding that his earning capacity had been restored. In support of this position he relies on two points of argument. First, he declares that there is insufficient evidence in the record upon which the full commission could find that the wages received by respondent represented earnings. Second, respondent urges us to find that the money received by him bore little or no relationship to the services he performed

for the corporation and therefore must be regarded at least in part as a gratuity passing to him from his employer.

The respondent's argument raises two issues to be decided. The first is whether or not there exists in the record legally competent evidence upon which the full commission could base its finding that the money received by respondent represented wages earned and no portion thereof constituted a gift. The second, one of first impression in this jurisdiction, is whether or not the mere recept by an injured employee of his former pre-injury salary given him in exchange for the rendition of work so perfunctory as to be of little or no value gives rise to a conclusive presumption that the employee's earning capacity has been fully restored and thereby effectively operates to preclude further recovery of workmen's compensation benefits. Since our decision on the second issue substantially affects our treatment of the first, we shall address our attention to the issues in inverse order.

Under the Rhode Island workmen's compensation act, it is clear beyond question that compensation is paid an injured worker for loss of earning capacity and not for the injury itself. *Best Plastics, Inc.* v. *Grilli*, 101 R. I. 32, 219 A.2d 913. Without a loss or impairment of earning capacity, no recovery of workmen's compensation benefits may be accorded an injured employee irrespective of the fact that a permanent or lingering physical injury may have been sustained. *Weber* v. *American Silk Spinning Co.*, 38 R. I. 309, 95 A. 603. Thus whether or not compensation payments should continue to be paid an injured employee is determined by ascertaining the degree to which the employee's earning capacity has been restored. When it is shown that the employee has regained his earning capacity to at least that stage at which it was before he sustained his disability, the act demands that compensation payments be terminated.

We have said before that evidence as to wages earned by

an employee on his return to work is material on the issue of his earning capacity, and when such evidence is adduced at trial it is entitled to that amount of weight which the commission may choose to assign it. *Tretton v. Atwood Crawford Co.*, 98 R. I. 346, 202 A.2d 286. In cases where it can be shown that the employee's post-injury earnings are at least equal to the amount which he earned prior to his injury, we have held that under the provisions of our compensation act it shall be conclusively presumed that the employee's earning capacity has been fully restored. This rule applies even though the employee has returned to a different type of work. *Universal Winding Co.* v. *Parks*, 88 R. I. 384, 148 A.2d 755. It is significant to note, however, that the conclusive presumption referred to in the *Universal Winding Co.* case arises only when it can be demonstrated to the full commission's satisfaction that the post-injury money received by the employee was in fact *earned*. We lay particular emphasis on the word "earned" in an effort to distinguish between the instance where money is paid an injured employee who renders services commensurate in value with the wages received and on the other hand where money is paid an injured employee who renders little or no services in return. In the former instance, we have an illustration wherein the wages received represent true earnings and must therefore be considered highly probative evidence on the issue of the degree to which an employee's earning capacity has been restored; in the latter instance, we have an illustration wherein the amount of money received is in no real sense earnings of the employee and should not be considered determinative evidence in deciding the present status of the employee's working capacity.

This distinction was first drawn by us in *Trzoniec* v. *General Controls Co.*, 100 R. I. 448, 216 A.2d 886, where we said wages actually received are not always a valid test of one's earning capacity. There we declared that earning capacity connotes a power or ability to earn income by the applica-

tion of one's individual talents—be they physical or mental. In *Trzoniec* we held that since the employee was so physically disabled as to preclude him from performing any work whatsoever, his earning capacity had not been restored despite a showing that he was paid his usual weekly salary subsequent to his injury. Moreover, we noted that the payments made by the employer were not intended to be in lieu of compensation benefits but instead were intended to be an expression of gratitude for past services. Under such a factual situation, we ruled that any money given to an employee by his former employer is to be regarded as a pure gratuity.

Likewise, we recognize that it is conceivable for an injured employee to return to work for his employer and receive a regular weekly payment of money designated as a salary, a portion of which is intended as recompense for services rendered and the residue of which is intended as a gift donated either as a reward for past loyalty, a gesture of sympathy or for some other equally magnanimous purpose totally unrelated to the work done or services performed. Hence, it must be said that in such an instance, the total amount received by the employee does not accurately reflect his earning capacity. 2 Larson, Law of Workmen's Compensation, §57.00, p. 1. In those situations, however, where an employee claims that he is the fortunate beneficiary of a gift, he has the consequent burden of establishing, like any other donee, the necessary incidents which the law demands be attendant upon a donative transfer. When such evidence is presented, the commission must weigh it and determine whether the payments were earnings, a gift or a portion of both. Should it be found that the money received represents a gift in whole or in part, the commission must consider other evidence in order to decide whether or not the employee continues to have a diminished earning capacity.

Although the principles recited above are relevant here,

they are of little avail to the present respondent since the full commission expressly found that no part of his present salary was a gratuity but instead all of it represented earnings.

Thus we now turn our attention to the first issue presented by this appeal, namely, whether or not there exists in the record sufficient evidence upon which the commission could base its findings. The limited scope of our duties on appeals from the workmen's compensation commission has been clearly spelled out in a long line of cases. Matters of fact finding are vested exclusively by statute in the workmen's compensation commission and the express and implicit findings of the full commission, supported by competent evidence, are conclusively binding on this court absent a showing of fraud. *Hebblewaite* v. *Powers*, 101 R. I. 347, 223 A.2d 442; *Roy* v. *Great Atlantic & Pacific Tea Co.*, 101 R. I. 53, 220 A.2d 512. On review of decrees of the commission this court will not weigh evidence or pass on credibility of witnesses but will merely inquire into the record for the sole purpose of discovering the existence of legally competent evidence to support the findings of fact. *Corey* v. *Hassenfeld Bros., Inc.*, 100 R. I. 483, 217 A.2d 82. Upon a finding of such evidence, we are obliged to affirm the full commission's decree regardless if there is found other evidence in the record contrary to that relied upon by the commission. *Burns* v. *Rhode Island Tool Co.*, 79 R. I. 169, 85 A.2d 925.

Our probe of the instant record satisfies us that there was legally competent evidence upon which the full commission could rest its findings. It is clear from the testimony of respondent and his father that the full commission could reasonably have found that the respondent's long experience in this type of work has provided him with unique knowledge in the art of rigging and the communication of his expert advice to the corporation makes him a valuable asset to the business. Thus the full commission was justi-

fied from the evidence in finding that respondent was rendering useful and meaningful service to the corporation which entitled him to receive a salary commensurate with the one received before his injury. And as we have said in *Stillwater Worsted Mills, Inc.* v. *Beal,* 89 R. I. 34, 150 A.2d 704, it matters not—in computing an injured employee's wages and earnings for the purposes of determining his current earning capacity—whether his post-injury wages or earnings were derived from work dissimilar to his pre-injury employment. It is of no particular significance that the employee returned to work in a different capacity for his former employer or in a totally new occupational field of endeavor; the fact of crucial significance is whether upon his return to work the employee was earning at least that amount he had been earning prior to his injury. When it is found that he has achieved his former level of earnings, his right to receive workmen's compensation ceases since his earning capacity is then deemed to be fully restored.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Keenan, Rice & Dolan, H. Eliot Rice,* for petitioner.

*Gunning & LaFazia, Raymond A. LaFazia,* for respondent.